UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TENESHA FERRAR, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:15 CV 1219 CDP |
| ) | |
| JOHNSON & JOHNSON CONSUMER ) | |
| COMPANIES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER OF REMAND

This is the second time this removed case has been before me on a motion for remand. Plaintiffs in this case are 98 individuals (or their spouses and/or personal representatives) who allege that they developed ovarian cancer from using Johnson & Johnson baby powder and shower products. Defendant Johnson & Johnson designed, developed, manufactured, marketed and sold the products, and defendant Imerys Talc mined the talc contained in the products. Plaintiffs filed this action on October 31, 2014, in the Circuit Court for the City of St. Louis, Missouri seeking to recover damages from defendants under state law claims for failure to warn, negligence, breach of warranty, wrongful death, civil conspiracy, and concert of action. Johnson and Johnson removed this case the first time on November 18, 2014, alleging diversity jurisdiction under 28 U.S.C. § 1332.

(Cause Number 4: 14 CV 1933 CDP). I subsequently remanded the case on December 12, 2014, based on a concession from Johnson & Johnson that remand was appropriate. (*Id.* at Docket # 29).

After the case was remanded, a second set of 71 plaintiffs filed a lawsuit in the same state court against the same defendants for injuries related to their use of the same baby powder and shower products. That case is styled *Dysart, et al. v. Johnson & Johnson, et al.*, and was assigned Cause Number 1522-CC00167 by the state court. On May 21, 2015, a third set of 68 plaintiffs filed a lawsuit against the same defendants in the same state court for the same type of injuries allegedly caused by the same products. That case is styled *Young, et al. v. Johnson & Johnson, et al.*, and was assigned Cause Number 1522-CC09728 by the state court. The same attorneys represent the plaintiffs in all three cases.

The Circuit Court for the City of St. Louis, Missouri, where all three cases were filed, assigns multi-plaintiff cases to Division 17 for initial pre-trial management. Then, the judge in Division 17 assigns cases to a trial judge for further pre-trial management and disposition. The *Farrar* case was assigned to Division 10 for "disposition, including trial" by the Division 17 presiding judge by Order dated June 9, 2015. [1-4]. On June 23, 2015, the plaintiffs in the *Dysart* case filed a motion to transfer their case to Division 10 "for pre-trial management" "so as to manage the pre-trial proceedings of this action, promote judicial

2

economy, and maintain consistency in management of the Court's docket." [1-5]. The reason cited by plaintiffs was "other multi-plaintiff pharmaceutical and medical device cases have been assigned to Division 10 for pre-trial management." *Id.* The *Young* plaintiffs filed an identical motion to transfer in their case. [1-6]. Neither the *Dysart* nor the *Young* plaintiffs requested assignment to Division 10 for trial. Despite this, the Division 1 judge who received the motions ordered the motions granted on June 23, 2015, but he also included a handwritten notation on each motion transferring the cases to Division 10 for "pre-trial management *and trial* . . . ." *Farrar* was set for trial in state court on a September 19, 2016, trial docket. [1-10 at 167]. *Dysart* and *Young* were not assigned trial dates by the state court.

On August 8, 2015, plaintiffs' counsel sent defense counsel proposed scheduling plans for all three cases. These proposals are attached as Exhibit A to the Notice of Removal and form the basis for the second removal of this case. The proposed scheduling plans follow a format suggested by defendants and are three separate documents, each with its own case caption and case number. However, they propose using the same deadlines for all three cases. Under the "Trial" heading, plaintiffs' counsel suggested November 29, 2016, for all three cases. These proposals were never filed or submitted to the state court, and the state court never approved any of these schedules. Relying on these proposed schedules,

Johnson & Johnson removed this case (along with *Dysart* and *Young*)[1] a second time, arguing that under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), *Ferrar*, *Dysart* and *Young* constitute a "mass action" as defined in 28 U.S.C. § 1332(d)(11)(B). Because *Ferrar*, *Dysart*, and *Young* do not constitute a mass action subject to removal under CAFA, this case will again be remanded to state court.

**Discussion**

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there." *In re Prempro Products Liability Litigation*, 591 F.3d 613, 619 (8th Cir. 2010). "The defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence." *Altimore v. Mount Mercy College*, 420 F.3d 763, 768 (8th Cir. 2005). A case must be remanded if, at any time, it appears that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

Under CAFA, the federal district courts have original jurisdiction over "mass actions," which are defined as a civil action "in which monetary relief claims of 100 or more persons are proposed to be *tried jointly* on the ground that the plaintiffs' claims involve common questions of law or fact . . . ." 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added). CAFA excludes from the definition of mass

---

[1] The *Young* and *Dysart* cases have been assigned to the Honorable E. Richard Webber (Case Nos. 4:15CV1221 and 4:15CV1222).

action a case where "the claims are joined upon motion of a defendant," or where "the claims have been consolidated or coordinated *solely for pretrial proceedings*." § 1332(d)(11)(B)(ii)(II,IV) (emphasis added). Even where "plaintiffs concede that their respective individual claims involve common questions of law or fact, 28 U.S.C. § 1332(d)(11)(B)(i), state court plaintiffs with common claims against a common defendant may bring separate actions, each with fewer than 100 plaintiffs, to avoid federal jurisdiction under CAFA—unless their claims are proposed to be tried jointly." *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1162-63 (8th Cir. 2013) (internal quotation marks and citations omitted). The critical issue here, as in many "mass action" cases, is if plaintiffs proposed a joint trial. The proposal for a joint trial may be explicit or implicit. *See id.* at 1163 (citing *Koral v. Boeing Co.*, 628 F.3d 945, 947 (7th Cir. 2011)). "The determination of whether claims in a putative mass action have been proposed to be tried jointly is necessarily a fact intensive inquiry that requires examination of both the 'initial pleading' and, if the case was not initially removable on that basis, any 'pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.'" *Smith v. Medtronic, Inc.*, 4:14CV1636 CEJ, 2014 WL 5489301, at *2 (E.D. Mo. Oct. 30, 2014) (quoting 28 U.S.C. § 144b(b)(3)).

In *Atwell*, three groups of plaintiffs brought product liability actions in the St. Louis Circuit Court, claiming that they were injured by the defendants'

5

transvaginal mesh devices. Each group consisted of fewer than 100 plaintiffs. Each group of plaintiffs filed motions asking that all of the cases be assigned to a single judge for purposes of discovery and trial. *Id.* at 1161. The cases were removed to federal court as a mass action, and two were remanded. In determining whether remand was appropriate, the Eighth Circuit Court of Appeals framed the issue as follows:

> [T]he critical issue becomes whether the three groups of plaintiffs proposed that their claims be "tried jointly," in which case § 1332(d)(11)(B)(i) applies and the cases are removable, or simply asked that their respective claims be 'consolidated or coordinated solely for pretrial proceedings,' in which case § 1332(d)(11)(B)(i)(IV) applies and the cases are not removable. The answer to this question requires careful review of the proceedings in the City of the St. Louis Circuit Court.

*Id.* at 1163. As instructed by *Atwell*, I have examined the voluminous state court record to determine whether the plaintiffs here, in *Dysart*, or in *Young* either explicitly or implicitly proposed that their claims be tried jointly. *See id.* Based on that review, I find that no such request was expressly made or can be inferred.

This case is easily distinguishable from *Atwell* because plaintiffs here did not request assignment to the same judge for trial. Instead, plaintiffs requested assignment to the same judge for pretrial proceedings *only*, and such a request is expressly excluded from CAFA's definition of mass action. *See id.* at 1163 (noting that if plaintiffs "simply asked that their respective claims be consolidated or coordinated solely for pretrial proceedings," then § 1332(d)(11)(B)(i)(IV) applies

6

and "the cases are not removable.") (internal quotation marks omitted). Moreover, unlike *Atwell*, plaintiffs here never argued that the same judge should hear all the so-called "talc cases" because "the same legal issues arise over and over . . . and . . . it doesn't make sense to have inconsistent rulings . . . ." *Id.* at 1164. In fact, the *Dysart* and *Young* motions for transfer do not refer to each other, the *Ferrar* case, or other "talc cases." Instead, the motions only request assignment to Division 10 because "other multi-plaintiff pharmaceutical and medical device cases have been assigned to Division 10 for pre-trial management." Here, unlike *Atwell*, the Court cannot infer that the "true purpose" of the plaintiffs' motions was a "joint assignment in which the inevitable result will be that their cases are tried jointly." *Id.* at 1165 (internal quotation marks omitted). *Atwell* does not support removal in this case.

To the extent Johnson & Johnson argues that the state court's *sua sponte* assignment of all three cases to the same trial judge somehow constitutes a "proposal for joint trial" by plaintiffs, I find this argument unpersuasive and agree with the Seventh Circuit Court of Appeals that "the state court's deciding on its own initiative to conduct a joint trial would not enable removal . . . That would not be a proposal . . . ." *Koral v. Boeing Co.*, 628 F.3d 945, 946-47 (7th Cir. 2012).

The Eighth Circuit relied on *Koral* in deciding *Atwell*, and I apply the same reasoning here.[2]

Here, Johnson & Johnson argues that this case became removable on August 8, 2015, when plaintiffs' counsel emailed proposed scheduling plans for all three cases to defense counsel. According to Johnson & Johnson, this amounted to a "proposal" for joint trial under the mass action provision of CAFA because plaintiffs suggested November 29, 2016 under the "Trial" heading in all three scheduling plans. The parties spend a great deal of time in their briefs arguing about what constitutes a "proposal" under CAFA as the term is not defined in the statute. Even if I assume for purposes of this motion only that the email communication in question constitutes a "proposal" for purposes of CAFA, the proposed scheduling plans here do *not* amount to a proposal for joint trial.

Similar to this Court, the Circuit Court for the City of St. Louis, Missouri, designates cases on particular tracks when they are filed to indicate when the case should be ready for trial. Under that court's Local Rule 31.5, products liability

---

[2] This argument would not support removal in any case because if such an event *were* sufficient to trigger the mass action provision of CAFA, then removal would be untimely. *Dysart* and *Young* were assigned to Division 10 on June 23, 2015, and Johnson & Johnson did not remove this case until August 8, 2015, which is outside the 30-day window for removal. *See* 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.").

cases such as this one are designated as Track 2 cases, which "shall be ready for trial 370 days from the date of filing." The court's local rules do not require parties to submit proposed scheduling orders unless the parties are requesting a redesignation from Track 2 to Track 3, which are complex cases. Local Rule 31.3 provides that "a case cannot be redesignated as a Track 3 case on motion of a party unless the party has submitted a proposed scheduling order." Here, the court did not specifically order the parties to submit proposed scheduling plans for any of the cases, and this case was already set for trial, although *Dysart* and *Young* were not. Nevertheless the parties do not dispute that they were working on proposed scheduling plans for all three cases and intended to present them to the Division 10 judge at some point. However absent either a local rule, a standing order, or a specific one directing which proposed deadlines should be provided (such as the typical Order Setting a Rule 16 conference used in this Court),[3] I am left to speculate as to what the plaintiffs meant when they suggested the same date for all three cases under the heading "Trial." Plaintiffs assert that they provided these proposed dates in response to, and in a format proposed by, Johnson & Johnson. Although Johnson & Johnson could have provided the initial email communications between the parties in opposition to remand, which could have

---

[3] For example, in this Court the parties are typically instructed to provide "the earliest date by which this case should reasonably be expected to be ready for trial," which is *not* a request for a specific trial date.

9

provided some insight into what the parties meant by a proposed date for "trial," it chose not to do so. This absence of evidence works to the detriment of Johnson & Johnson, which bears the burden of proof in this case.

Here, Johnson & Johnson has not demonstrated by a preponderance of the evidence that the proposed scheduling plans amount to a request for a joint trial. Initially, there is the obvious point that plaintiffs submitted three separate documents (one for each case), with three separate case captions and cause numbers, to defendants. Apart from this, the mere fact that plaintiffs used November 29, 2016, as the date under a heading called "Trial" on all three proposed scheduling plans does not prove that plaintiffs' "true purpose" was a "joint assignment in which the inevitable result will be that their cases are tried jointly." *Atwell*, 740 F.3d at 1165. At most, this proves only that plaintiffs believed that all three cases could be set on the *same trial docket,* which is entirely different than suggesting that the cases be tried jointly. Equally likely, however, these suggested dates signal only that the cases would all be *ready for trial* as of that date, not that they should even be set on the same trial docket, let alone tried jointly or even in the same division, as there is also the possibility that plaintiffs would ask for reconsideration of the decision to assign *Dysart* and *Young* to Division 10 for trial.

To accept Johnson & Johnson's argument (that this "constituted an express proposal to commence trial for multiple plaintiffs in *Farrar*, *Dysart*, and *Young*, on the same date, in the same courtroom, and before the same judge") would be to ignore the realities of the state court's – or for that matter, any court's – trial docketing system. I take judicial notice that, for the week of September 28, 2015, the Division 10 docket shows eight jury trials set to begin on September 28, 2015, plus a dismissal hearing. For the week of October 13, 2015, eight different jury trials are set to begin on October 13, 2015, in Division 10. Of course, this does not mean that all of the cases will actually be reached on those dates, or possibly even within the week or weeks following. Absent some special setting (and the parties have not argued that such is the case here), the same docketing system presumably applies to the November 29, 2016, Division 10 trial docket. This means that even if the state court had adopted the proposed scheduling plans, at best *Ferrar*, *Dysart*, and *Young* would be set on November 29, 2016, with an undetermined number of other cases, any number of which could go to trial interspersed between these three cases. In short, there can be no presumption that these cases would go to trial even close together, let alone on a serial basis, even if they were all actually set on the same trial docket.

Despite this reality, Johnson & Johnson would have me conclude that plaintiffs' "true purpose" here was to seek a joint trial of their cases based on

11

nothing more than parallel dates submitted in three separate proposed scheduling plans without any explanation of what these proposed dates actually mean. This I cannot do. Here, the parties never had a conference with the Division 10 judge about these proposed scheduling plans because Johnson & Johnson rushed to this courthouse with its removal papers immediately upon receiving the email from plaintiffs' counsel. Had it waited to hear what plaintiffs' counsel would actually *say* at the scheduling conference about the proposed trial dates, there might have been a record sufficient to conclude that they were in effect seeking a joint trial like the plaintiffs in *Atwell*. But this is not the case here. Unlike *Atwell,* plaintiffs' counsel has not suggested selecting "bellwether" or exemplar cases to try, which the Eighth Circuit found persuasive in deciding that plaintiffs really wanted a joint trial in that case. *See Atwell*, 740 F.3d at 1165-66.[4] To the extent Johnson & Johnson argues it is possible that plaintiffs will claim in subsequent trials that the results of the first trial should be given preclusive effect, I agree with this Court's decision in *Medtronic* that such a possibility is insufficient to demonstrate an implicit proposal for joinder. *See Medtronic*, 2014 WL 5489301, at *3. As in *Medtronic*, if the 237 plaintiffs in *Ferrar*, *Dysart*, and *Young* had instead brought

---

[4] That the state court chooses to coordinate pretrial matters in these and other talc cases by assigning them to the same Special Master does *not* amount to a proposal by plaintiffs for joint trial as required to find a mass action under CAFA. The same is true even if the Special Master issues identical rulings on identical motions filed in these cases. It bears repeating that cases coordinated for pretrial proceedings only are expressly excluded from CAFA's definition of "mass action." *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(IV).

individual actions against the defendants, "the fact that [236] of them might benefit from rulings made in the first trial would not support an argument for joinder." *Id.* at *3. Moreover, plaintiffs have made no such arguments here. All we are left with, then, *at most* is the fact that plaintiffs think that *Ferrar*, *Dysart*, and *Young* could be set on the same trial docket. As shown from Division 10's trial docket, this does not even come close to a proposal that their claims be tried jointly under the mass action provision of CAFA. Johnson & Johnson has provided no other evidence that plaintiffs either explicitly or implicitly requested a joint trial of their claims, and there is nothing in this record to suggest that this Court has subject matter jurisdiction over this action.[5] *See Hendrich v. Medtronic, Inc.,* 4:14CV1635 AGF, 2014 WL 5783013, at *3 (E.D. Mo. Nov. 5, 2014); *Anders v. Medtronic, Inc.*, 4:14 CV 1637 ERW, 2014 WL 5320391, at *4 (E.D. Mo. Oct. 17, 2014). Because this case is brought by fewer than 100 plaintiffs, it is not a mass action and does not meet the jurisdictional requirements of CAFA. Thus remand is required.

---

[5] Johnson & Johnson and Imerys Talc have also filed motions to dismiss for lack of personal jurisdiction and urge me in those motions to decide the issue of personal jurisdiction first. Defendants acknowledge, as they must, that it is within my discretion to determine whether to decide issues of personal or subject matter jurisdiction first. I decline to rule on issues of personal jurisdiction first, as the inquiry regarding subject-matter jurisdiction is not "arduous." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999) (recognizing that where, as here, the issue of subject matter jurisdiction is straightforward, "expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first."). I also note that the state court considered and denied their motions to dismiss for lack of personal jurisdiction on May 4, 2015.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for remand [23] is granted, and this case is remanded to the 22nd Judicial Circuit Court of the City of St. Louis, Missouri.

**IT IS FURTHER ORDERED** that all pending motions are denied without prejudice to being refiled in state court.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of September, 2015.